Argued and submitted December 5, 1983, reversed and remanded May 30, 1984

## RONALD PHILLIP SMITH,
*Petitioner on review,*

*v.*

## STATE BOARD OF PAROLE,
*Respondent on review.*

(CA A25158; SC 29740)

683 P2d 998

Paul J. DeMuniz, Salem, argued the cause for petitioner on review. On the brief was Ronald Phillip Smith, petitioner in propria persona.

J. Scott McAlister, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

PETERSON, C. J.

## PETERSON, C. J.

In 1979, the Oregon Legislature adopted an enhanced penalty statute which required an offender to serve a minimum term of imprisonment for the use or threatened use of a firearm during the commission of a felony. ORS 161.610(4) provides that work release or parole is not permitted "until the minimum term of imprisonment is served, *less reductions of imprisonment for good time served * * *.*" (Emphasis added.) The petitioner was convicted of a crime involving the use of a firearm and was sentenced to a 20-year term of imprisonment with a five-year statutorily required minimum. The issue in this case is whether the Board of Parole was correct in its assumption that ORS 161.610 required that it set petitioner's initial parole release date at not less than five years, with no reduction of the five-year minimum for "good time." We conclude that the Board erred, reverse the Court of Appeals and remand the case to the Board of Parole for further proceedings consistent with this opinion.

I

Historically, when a person was sentenced to a term of imprisonment, the entire sentence was served before release. Reformers argued that fixed sentences shattered any hope of early release and embittered the prisoner against the correctional institution. They claimed that a rigid sentence structure was counterproductive to rehabilitation.

Starting with New York in 1817 and adopted by every state and the District of Columbia by 1916, "good time" laws were passed allowing prison administrators to reduce fixed sentences as a reward for a prisoner's good behavior. *See generally,* Giardini, *Goodtime - Placebo of Correction,* Amer J Corr, March-Apr 1958, at 3ff. "Good time" statutes were a form of statutory commutation, subject only to verification by prison officials that the prisoner behaved well. Good time, once credited, functioned as an absolute reduction in a prisoner's sentence. A prisoner's release, with credit for good time earned, was unconditional, and the full sentence was deemed served.

Parole is a program in which an offender, after serving part of a sentence, is conditionally released under

supervision. The offender's parole is contingent upon continued satisfactory behavior and compliance with stated conditions. The concept of parole was first advocated in the mid-nineteenth century and has become prevalent in the United States since the 1940's. D. Dressler, *Practice and Theory of Probation and Parole* 44-61 (1959). Parole provides a transitional period of supervision to aid the parolee in readjusting to society and attempts to protect society from the potential recidivist. *Id.* at 61.

## II

The Oregon statute concerning the calculation of and credit for "good time"[1] is ORS 421.120, which provides in part:

"(1)   Each inmate confined * * * upon any conviction in the penal or correctional institution, for any term other than life, and whose record of conduct shows that the inmate faithfully has observed the rules of the institution, shall be entitled to a deduction from the term of sentence to be computed as follows:

"* * * * *

"(b)   From the term of a sentence of more than one year, one day shall be deducted for every two days of such sentence actually served in the penal or correctional institution.

"* * * * *

"(h)   The Corrections Division shall develop * * * a uniform procedure for granting, retracting and restoring deductions allowed in paragraphs (a) to (g) of this subsection."

As mandated by ORS 421.120(1)(h), the Corrections Division has promulgated rules designed to create a uniform procedure for granting, retracting and restoring good time. *See generally* OAR 291-100-005 to 291-100-060.

ORS 421.120(1)(b) seems to require that deductions for good time be credited after the good time has been earned.

---

[1] ORS 421.120 refers only to "reduction of term of sentence" and does not use the "good time" nomenclature found in ORS 161.610 and the administrative rules of the Corrections Division and the Board of Parole. As commonly used, good time refers only to the reduction for good behavior pursuant to ORS 421.120(1)(a) and (1)(b) and not to reductions in the term of a sentence for work or meritorious service, ORS 421.120(1)(c) through (g). The Corrections Division distinguishes the two reduction schemes by defining good time pursuant to ORS 421.120(1)(a) and (b) as "statutory good time" and reduction for work or meritorious service pursuant to ORS 421.120(1)(c) through (g) as "extra good time." *See* OAR 291-100-008(4) and (12).

However, as one commentator has noted, the constant earning and subsequent deduction of good time may result in an administrative nightmare.

"Good time may be credited automatically in a lump sum at the beginning of a prison sentence or credited month by month as it is earned. The latter method forces the prison to constantly recalculate the prisoner's release dates. This recalculation, of course, is an enormous administrative burden. In large prison systems with vast inmate turnover and scarce resources, it is inconceivable that a thoughtful decision could be made each month as to whether an individual prisoner deserves to be awarded good time. Therefore, there is an inexorable tendency for statutory and meritorious good time to be awarded automatically. * * *

"The point is significant. Good time systems are necessarily bureaucratized. Time credits have become automatic; individual decisionmaking goes only to the question of forfeiture. * * *" (Footnotes omitted.) Jacobs, *Sentencing by Prison Personnel: Good Time,* 30 UCLA L Rev 217, 225 (1982).

The Corrections Division appears to follow this general approach. OAR 291-100-050(1) states that a work sheet will be prepared for every "new commitment" in an Oregon Corrections Division facility which will include, in addition to other sentence information, "[t]he amount of Statutory Good Time earned on the total sentence subtracted from the Maximum Date * * *." This rule suggests a practice under which anticipated statutory good time is calculated at or near the time of admission and subtracted from the maximum term of confinement under the sentence of the court.[2]

■ In the process of establishing a date for release on parole, the Board of Parole apparently recognizes the efficiency of noting good time deductions from the maximum

---

[2] OAR 291-100-023 concerns the calculation of good time. In the case of an inmate sentenced to more than one year, the "good time date" (the anticipated date of discharge) is approximately two-thirds of the sentence. *See also* OAR 291-100-050(1).

By contrast, OAR 291-100-036 is the Corrections Division rule concerning forfeiture of good time. It provides in relevant part that good time may be withheld only upon the recommendation of a Disciplinary Committee, that the inmate must be given an opportunity for a hearing, and that in no instance shall good time forfeitures be recommended "unless all other disciplinary options have been specifically considered by the committee and deemed to be * * * inadequate to the seriousness of the misconduct * * *."

sentence at the outset. In the instant case the Board Action Form setting the 60-month imprisonment before parole lists petitioner Smith's good time date as August 1, 1994, even though his 20-year sentence runs until April 1, 2001. By including this administrative data, the Board of Parole neither confers good time credit nor overrides the jurisdiction of the Corrections Division. It merely informs all concerned that if the inmate faithfully performs within the rules of the institution where he or she is incarcerated, he or she will be entitled to absolute release on the "good time" date.[3]

## III

Petitioner pleaded guilty to first degree manslaughter and no contest to a charge of attempting to use a dangerous weapon. He was sentenced to 20 years on the manslaughter charge and five years on the attempt. The sentences were to run concurrently.

Because both crimes were committed with a firearm, the sentencing court ordered that petitioner serve a minimum of five years before he would be eligible for work release or parole. ORS 161.610(5)(a). Both sentencing orders state that "the Court imposes a minimum term of imprisonment on this sentence of five (5) years pursuant to ORS 161.610."

ORS 161.610 in part provides:

"(4)  Notwithstanding the provisions of ORS 161.605 or 137.010(2), if the court finds beyond a reasonable doubt that the defendant used or threatened to use a firearm during the commission of the crime, it shall impose at least the minimum term of imprisonment as provided in subsection (5) of this section. Except as provided in subsection (6) of this section, in no case shall any person punishable under this section become eligible for work release or parole until the minimum term of imprisonment is served, less reductions of imprisonment for good time served, nor shall the execution of the sentence imposed upon such person be suspended by the court.

"(5)  The minimum terms of imprisonment for felony convictions in which the court finds that the defendant used or threatened to use a firearm shall be as follows:

---

[3] A Board of Parole rule, OAR 255-35-025(2), sets parole release dates with reference to the "statutory good time date" when the good time date is earlier than the matrix guideline range. The matrix guideline range is discussed in part III of the text.

"(a)   Except as provided in subsection (6) of this section, upon the first conviction for such felony, five years.

"(b)   Upon conviction for such felony committed after punishment pursuant to paragraph (a) of this subsection, 10 years.

"(c)   Upon conviction for such felony committed after imprisonment pursuant to paragraph (b) of this subsection, 30 years.

"(6)   If it is the first time that the defendant is subject to punishment under this section, the court may suspend the execution of the sentence otherwise required under paragraph (a) of subsection (5) of this section, or impose a lesser term of imprisonment, when the court expressly finds mitigating circumstances justifying such lesser sentence and sets forth those circumstances in its statement on sentencing."

ORS 144.120(1) requires the Board of Parole, within six months of admission of a prisoner, to "conduct a parole hearing to interview the prisoner and set the initial date of release on parole pursuant to [ORS 144.120(2)]." In determining the "initial date of release on parole" (hereinafter referred to as parole release date), the Board is required to apply its rules which establish ranges of duration of imprisonment to be served for felony offenses before release on parole. ORS 144.780.[4] ORS 144.780(3) requires that the ranges give "primary weight * * * to the seriousness of the prisoner's present offense and his criminal history." Pursuant to that directive, the Board has adopted a matrix that provides guideline ranges

---

[4] ORS 144.780 provides:

"(1)   The [Advisory Commission on Prison Terms and Parole Standards] shall propose to the board and the board shall adopt rules establishing ranges of duration of imprisonment to be served for felony offenses prior to release on parole. The range for any offense shall be within the maximum sentence provided for that offense.

"(2)   The ranges shall be designed to achieve the following objectives:

"(a)   Punishment which is commensurate with the seriousness of the prisoner's criminal conduct; and

"(b)   To the extent not inconsistent with paragraph (a) of this subsection:

"(A)   The deterrence of criminal conduct; and

"(B)   The protection of the public from further crimes by the defendant.

"(3)   The ranges, in achieving the purposes set forth in subsection (2) of this section, shall give primary weight to the seriousness of the prisoner's present offense and his criminal history."

based on the two statutory factors primary to the determination of an appropriate parole release date. OAR 255-35-025(1) provides:

> "The Board shall establish a prison term by setting a parole release date within the range for the appropriate offense severity rating and history/risk score shown in the guideline matrix, * * *, unless it finds aggravation or mitigation sufficient to justify variation from the range pursuant to rule 255-35-035 or takes action according to section (2) of this rule, or elects to deny parole according to rule 255-35-030."

After petitioner was admitted to the correctional facility, the Board of Parole conducted a hearing to set an initial date for release on parole pursuant to the requirements of ORS chapter 144 and the related administrative rules, OAR 255-035-005 *et seq.* Petitioner had been given a criminal history/risk assessment score of 11 (the best risk category) and a criminal category or offense severity score of six. In most cases, this combination results in a matrix guideline range of 30 to 40 months. Rather than setting petitioner's parole release date within the 30 to 40 month range, the Board set the parole release date as March, 1985, a term of 60 months.[5]

Petitioner objected to the release date. In a letter to the Parole Board, he asserted that under ORS 161.610(4) his mandatory minimum should be reduced by the good time he earns if he "faithfully has observed the rules of the institution * * *," ORS 421.120(1), and that his parole release date should be determined in light of those credits. In rejecting the petitioner's request, the Executive Director of the Board of Parole wrote petitioner:

> "The only time good time credits are subtracted from a sentence imposed under ORS 161.610 is when the minimum sentence imposed equals the maximum sentence. For instance, if the only sentence imposed by a judge is a five-year minimum sentence under ORS 161.610 or a concurrent

---

[5] ORS 144.785(1) permits variations from the guideline range "to be applied when aggravating or mitigating circumstances exist." The Board of Parole has promulgated rules to implement this statutory authority. *See* OAR 255-35-022 to 255-35-035. The Board in this case believed that it could not set a parole release date earlier than 60 months. We do not know what the Board's decision would have been had it not deferred to the five-year minimum it apparently thought was required by ORS 161.610(5). See discussion in part IV of the text.

five-year sentence is imposed, good time will be subtracted. However, if a five-year minimum imposed under ORS 161.610 and another longer sentence is also imposed, good time will be subtracted from the longer sentence, not the sentence imposed under ORS 161.610.

"You are not eligible for good time credits on a sentence imposed under ORS 161.610 as you have a 20-year sentence from which good time will be subtracted."[6]

## IV

We turn to the question whether a defendant who is sentenced to a "minimum term of imprisonment" of five years under ORS 161.610 may be released on parole in less than five years. As stated above, ORS 161.610(4) states that the inmate shall not be "eligible for work release or parole until the minimum term of imprisonment is served, *less reductions of imprisonment for good time served.*" (Emphasis added.)

The inclusion of the emphasized language compels the conclusion that the legislature intended that in some cases an inmate would be eligible for release on parole before the end of the minimum term of imprisonment. We emphasize that, insofar as the Board is concerned, all that ORS 161.610(4) does is to set the earliest time at which the Board can release an inmate on parole. It does not *require* the Board to advance the parole release date because of good time earned on a minimum sentence.

The Board's letter quoted above suggests that because good time credits reduce a sentence, the subtraction

---

[6] Before this court, the Board has also asserted this different theory:

"The award of statutory good time is governed by ORS 421.120 which premises the award of a deduction from the term of imprisonment for good behavior upon the recommendation of the Corrections Division. ORS 421.120(1)(h). Therefore, ORS 161.610(4) is applicable only after the certification of statutory good time occurs. * * *"

This contention runs counter to the conditional nature of the Board's initial action and its actual practices. *See* OAR 255-35-025(2). ORS 144.120(1) expressly qualifies the effect of the Board's initial decision on a parole release date. It states that "[r]elease shall be contingent upon satisfaction of the requirements of ORS 144.125." ORS 144.125(2) states that "[t]he board shall postpone a prisoner's scheduled release date if it finds, after a hearing, that the prisoner engaged in serious misconduct during confinement."

If an inmate fails to earn good time, ORS 144.125(2), and the relevant rules of the two agencies, OAR 255-50-005 (Table 1) and OAR 291-100-036 (Table 1), provide an efficient mechanism for extending the parole release date.

for good time is relevant only to the inmate's maximum sentence. The Board's letter also states that if an inmate is sentenced to a five-year sentence with a five-year minimum, the inmate could be eligible for parole before serving five years of imprisonment.

The legislative history casts little light on the question. From the statutory language one thing is clear: The legislature intended that, in some situations, an inmate sentenced to a "minimum term of imprisonment" under ORS 161.610 could be conditionally released on parole or work release before the expiration of the minimum term.

The term "less reduction of imprisonment for good time served" has two possible meanings:

1. The legislature may have meant that if the inmate's good time date, calculated by deducting the anticipated good time from the maximum, fell within the minimum term of imprisonment, the inmate would be eligible for work release or parole as early as that time.

2. On the other hand, the legislature may have meant that from each minimum term, good time expected to accrue would be deducted, with the result that every inmate sentenced to a five-year mandatory minimum term could be released on parole as early as three and one-third years (two-thirds of five years) if no good time was forfeited.

■ We believe that the more likely construction of ORS 161.610(4) is that the legislature intended that the Board of Parole, in setting the parole release date, could set the date as early as the minimum term less good time expected to be accrued, irrespective of the length of time the overlying term of imprisonment extends beyond the minimum term imposed under ORS 161.610(5).

Had the Board been aware that it could set the parole release date as early as the minimum term (five years), less good time expected to be accrued, it might have set a parole release date earlier than April, 1988. On the other hand, it might have decided that petitioner be required to serve the five-year minimum. See ORS 144.785 and OAR 255-34-025. All that ORS 161.610(4) does is set a time before which the Board of Parole cannot release an inmate on parole. In this

case, that time appears to be three and one-third years (two-thirds of five years). Accordingly, we remand this case to the Board of Parole for further proceedings consistent with this opinion.

Reversed and remanded to the Board of Parole.